1           UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3       Before The Honorable Vince Chhabria, Judge

4

5  DEWITT LAMBERT,                )
                                  )
6           Plaintiff,            )
                                  )
7  vs.                            )   No. C 17-05369-VC
                                  )
8  TESLA, INC.,                   )
                                  )
9           Defendant.            )
   _____)

10

11                             San Francisco, California
                               Thursday, December 21, 2017
12

13  TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
          RECORDING  10:08 - 10:32 = 24 MINUTES
14

15  APPEARANCES:

16  For the Plaintiff:
                            California Civil Rights Law
17                            Group
                            332 San Anselmo Avenue
18                          San Anselmo, California 94960
                       BY:  LAWRENCE ANTHONY ORGAN, ESQ.
19                     BY:  NOAH BARON, ESQ.

20  For the Defendant:
                            Ogletree, Deakins, Nash, Smoak
21                            & Stewart, P.C.
                            Steuart Tower, Suite 1300
22                          One Market Plaza
                            San Francisco, California
23                            94105
                       BY:  DANIELLE L. OCHS, ESQ.
24                     BY:  RACHEL JAN MOROSKI, ESQ.

25

*Echo Reporting, Inc.*

2

1  Transcribed by:              Echo Reporting, Inc.
                                Contracted Court Reporter/
2                               Transcriber
                                echoreporting@yahoo.com
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  <u>Thursday, December 21, 2017</u>                    <u>10:08 a.m.</u>

2                     P-R-O-C-E-E-D-I-N-G-S

3                          --oOo--

4          THE CLERK:  Calling case number 17-CV-05369,

5  Lambert versus Tesla, Inc.

6      Counsel, please step forward and state your appearances

7  for the record.

8          MS. OCHS:  Good morning, your Honor.  Danielle

9  Ochs on behalf of Tesla.

10         THE COURT:  Good morning.

11         MR. ORGAN:  Good morning, your Honor.  Larry Organ

12 for the plaintiff, Mr. Lambert.

13         THE COURT:  Good morning.

14     Okay.  So I guess one question is, I just learned that

15 plaintiff is attempting to file an amended complaint.

16         MR. ORGAN:  Yes, your Honor.

17         THE COURT:  Last night?

18         MR. ORGAN:  Yes, your Honor.  I have a copy of it

19 for the Court.

20         THE COURT:  But under the rules, you're not

21 allowed to file an amended complaint at this time without

22 seeking leave, are you?

23         MR. ORGAN:  My understanding is we can because

24 there hasn't been an answer filed.

25         THE COURT:  I thought that the rule was that you

4

1  could only file an amended complaint as a matter of course

2  in response to a motion to dismiss if you do so within 21

3  days of the filing of the motion to dismiss.

4        MR. ORGAN:  Well, your Honor, if -- I didn't read

5  that part of the rule.  If that's true, then I apologize,

6  your Honor.  We would seek leave to amend.

7     We only sought leave to amend so that we would clarify

8  the relief that we are actually seeking in this proceeding.

9        THE COURT:  Yes, I was going to ask how you --

10 what is the difference between the amended complaint that

11 you tried to file last night and the complaint that is

12 currently on file.

13       MR. ORGAN:  Sure.  So what we wanted to clarify is

14 that we do see some ambiguity in terms of the case law

15 relative to whether or not we're seeking the same relief in

16 the state court action or this action.  So we are seeking --

17 and I apologize, your Honor, if we violated a rule.  Somehow

18 I missed that, so that was my fault.

19    But we're seeking to only ask for injunctive relief in

20 this Court and then also the declaratory judgment.  So only

21 equitable that --

22       THE COURT:  And what are you trying to get around

23 by only seeking injunctive relief?

24       MR. ORGAN:  So that there's no duplication of

25 what's going on in the arbitration in terms of the relief

5

1 that's being sought there versus the relief that's being

2 sought with this Court.

3        THE COURT:  So you think that by refraining from

4 seeking certain relief in the state court action and

5 refraining from seeking certain relief in this action you

6 can avoid any arguments that the suits are duplicative?

7        MR. ORGAN:  Well, I don't think that the case

8 turns on whether they're duplicative or not because there's

9 concurrent jurisdiction, so the state has jurisdiction over

10 its claims and the federal court has jurisdiction over its

11 claims.  So it's not dispositive.

12        THE COURT:  Well, maybe we can cut through this.

13        MR. ORGAN:  Yes.

14        THE COURT:  I mean I think the problem you have is

15 the motion to compel arbitration.

16        MR. ORGAN:  The Gilmer analysis, your Honor.

17        THE COURT:  And I -- you know, my concern here --

18 let me pull up your file for this case.

19     You know, the concern that I have is that I tend to

20 agree with the Ninth Circuit's analysis in Duffield, the

21 1998 case.  My view of it, for what it's worth -- and it's

22 worth nothing I think at this point -- is that it is unclear

23 what that language means, "encouraging alternative dispute

24 resolution" and what that language was meant to apply to.

25     And so you ought to look to legislative history to try

6

1  to figure that out.  And it struck me -- I mean I haven't

2  done a deep dive on it, but it struck me that the analysis

3  in Duffield, you know, which reached the conclusion that

4  mandatory arbitration was inconsistent with the goals of the

5  statute was correct.

6      But we have this later Ninth Circuit en banc decision.

7          MR. ORGAN:  Luce?

8          THE COURT:  Luce.  Luce Forward.  And the en banc

9  court came out a different way.  I tend to disagree with the

10 analysis in Luce Forward, but it's the analysis that binds

11 me.  And I understand that this is a section 1981 claim, not

12 a Title VII claim, but the analysis, it seems to me, applies

13 squarely.

14     And so I don't see how -- I think that Ninth Circuit

15 precedent basically compels me to compel arbitration in this

16 case, even though I disagree with the Ninth Circuit

17 precedent.

18     So what is your basis for -- what would be the basis

19 for distinguishing the Luce Forward case and the -- what

20 would be the basis for concluding that the Luce Forward

21 analysis doesn't apply here?

22         MR. ORGAN:  Several reasons, your Honor, two major

23 ones.

24     Number one, Luce focused on Title VII and --

25         THE COURT:  Well, I understand that, but the

7

1  question is what -- why would the analysis be different

2  here?

3        MR. ORGAN:  Several reasons why there are

4  differences.

5      First of all, the Civil Rights Act of 1866 was passed

6  before the FAA, and Title VII was passed after FAA.  And

7  what the Luce court reasoned was that surely Congress when

8  it passed Title VII took into account the FAA.  And so it

9  had to incorporate those provisions.  There --

10        THE COURT:  Yeah, but this language encouraging

11 alternative dispute resolution was adopted when?

12        MR. ORGAN:  That was adopted in 1991, the Civil

13 Rights Act of 1991.

14        THE COURT:  So that was after the FAA was enacted,

15 right?

16        MR. ORGAN:  That's correct, but --

17        THE COURT:  So I mean why doesn't that concept

18 apply here also?

19        MR. ORGAN:  Because all that Congress was doing at

20 that time was saying -- essentially codifying the Gilmer

21 three-part analysis.  And when you do the Gilmer three-part

22 analysis in this case to section 1981 claims, it's clear

23 that the Court's inclination to not rule for arbitration is

24 supported by Gilmer because it tells you you have to look to

25 the legislative history.

8

1    And when you look to the legislative history of section

2    1981, it's clear that the Reconstruction Congress did not

3    intend to have those claims subject to an arbitration-like

4    setting like the Freedmen's Bureaus.

5        And when you take that into --

6            THE COURT:  I mean I think that's true, but I

7    think the -- doesn't the Luce Forward case stand for the

8    proposition that whatever the Reconstruction Congress

9    intended, Congress in 1991 intended for these claims to

10   be -- Title VII claims and 1981 claims and whatever other

11   claims are covered by this language to be arbitrated.

12       Again, I disagree with it, but I think that's what the

13   Ninth Circuit -- the Luce Forward decision stands for.

14           MR. ORGAN:  Luce Forward does not stand for -- and

15   I'm not criticizing the Court here, your Honor.  I think --

16   I'm just asking the Court to perhaps look at it from a

17   different perspective, and that is Luce Forward notes

18   that -- Mr. Baron just passed me something so I'm -- if you

19   look at the language in section 118, it says "where

20   appropriate and to the extent authorized by law."  That's

21   what Gilmer tells us we have to do.

22       And so in so opining, the Luce court is essentially

23   saying look to Gilmer, when you apply the Gilmer -- it's not

24   changing, it's not changing the situation prior to the

25   passage in 1991.  Essentially, it's codifying the law that

9

1 already existed pursuant to Gilmer.

2      If the Court finds in applying the Gilmer standards

3 that arbitration is appropriate, then the Court should rule

4 that arbitration is there.

5      But what plaintiff is positing is that based on the

6 legislative history of section 1981 and the fundamental

7 purposes of section 1981, that the Court should -- applying

8 that Gilmer analysis, relying on the language that Congress

9 itself said, "where appropriate and to the extent authorized

10 by law" -- if the Court applies that language and then does

11 the correct legislative history analysis pursuant to

12 Gilmer -- which isn't challenged by the defendant here in

13 any of their papers in terms of what the meaning of the

14 legislative history is.

15      But if the Court does that analysis, that Gilmer

16 analysis, which is codified, the Court will come to the

17 conclusion that the plaintiffs have put forward, which is

18 section 1981, apart from Title VII and the other statutes

19 that are encompassed by the EEOC formula, because those took

20 place after the FAA -- if the Court engaged in that

21 analysis, the Court will actually come down on the side of

22 plaintiffs here and find that arbitration is inappropriate

23 in section 1981 cases.

24      And in fact, that's one of the things that we seek in

25 this case, is a ruling by the Court that says specifically

10

1 that 1981 cases are not arbitrable.

2          THE COURT:  Okay.  Any other arguments you want to

3 make in support of the idea that the Luce Forward analysis

4 doesn't apply to 1981 claims?

5          MR. ORGAN:  The only other thing, there are some

6 cases I know that were cited by the defendant in their

7 papers.  I think we distinguish those cases.  But in terms

8 of the Luce analysis, your Honor, I think that there is this

9 fundamental difference structurally in terms of Title VII

10 versus section 1981 cases.

11     Even though they fall under the rubric of civil rights

12 statutes, because of the time that they were passed and the

13 direct congressional intent at that time and the fact that

14 Title VII has the EEOC to enforce it, those make section

15 1981 claims, even though they're on the same level as Title

16 VII claims, fundamental different.

17     And so I think that the Court could rule -- still

18 within the guidelines of Luce, pursuant to the Gilmer

19 factors, could rule in favor of the plaintiff, your Honor.

20          THE COURT:  All right.

21          MS. OCHS:  Your Honor, we disagree.  We think that

22 Luce does apply.

23     The analysis in section 118, there's nothing in Luce

24 that would suggest that its detailed analysis of the

25 operation of section 118 would not apply to 1981 claims.

1        And I think that when you do apply the Gilmer analysis,

2   we reach a different conclusion.  We do disagree with what

3   they extract from the legislative history of the 1866 Act.

4        First, we think that per Luce, it's inappropriate to go

5   back that far when we have text of an act passed in 1991

6   after the enactment of the FAA that clearly states,

7   unambiguous, that it's encouraging arbitration.  There's no

8   ambiguity there.  There's just one phrase that you indicated

9   might be --

10            THE COURT:  I think there -- I don't know how far

11   you're going to get arguing to me that there's no ambiguity.

12            MS. OCHS:  Okay.  With --

13            THE COURT:  I think that the phrase -- like I

14   said, as the Court did in Duffield, I mean I think that that

15   phrase could be interpreted as, you know, encouraging

16   voluntary arbitration or it could be interpreted as

17   contemplating mandatory arbitration.  I don't think the

18   language is clear, and I don't really see how the Ninth

19   Circuit in Luce Forward concluded that the language clearly

20   said one thing or the other.

21            MS. OCHS:  Okay.  Well, me turn to --

22            THE COURT:  That's what it said.

23            MS. OCHS:  Right.  I think we do disagree on

24   whether or not the language is clear.

25        But let me just turn to another point with respect to

12

the 1966 Act.  Counsel's referred to the congressional
intent there, what Congress intended with respect to these
claims.  What are these claims.

The claims in this lawsuit relate to alleged employment
discrimination based on race, private employment
discrimination based on race.  That claim didn't exist in
1866.  That claim didn't exist until 1968, I think it was,
with the -- I'll have to look up the name of the case.  It
begins with a "J" -- that held that the corollary, 1982
which relates to housing discrimination, applied to private
actors, not just government actors.

And up until that point in time -- and I will call that
case up for you.  Up until that point in time it wasn't
known to the world that the Reconstruction Era statutes
applied to private conduct, so certainly not to private
employment.

And it wasn't until 1975 in the Supreme Court case -- I
think it's Johnson, I can get you that name too -- where the
court held, yes, in fact it applies to private employment
discrimination.  It sort of announced that standard at the
highest levels because some lower courts had been tinkering
with it but no Supreme Court had actually acknowledged that
development.  That's a hundred years after.

So to focus extensively on the congressional intent in
1866 when the intent did not include using 1981 for private

13

1   employment discrimination claims doesn't seem to me to make

2   a whole lot of sense when faced with much more current

3   legislation in 1991 in which the Congress, in our view, made

4   clear -- it certainly expressed an interest in using

5   arbitration in race employment discrimination claims.

6        So we would contend that that legislative history is

7   not the central point of this case.

8        Also, with respect to plaintiff's argument that somehow

9   arbitrating 1981 claims prevents the government from

10  enforcing the rights that, for example, it an enforce in

11  Title VII claims because there's an administrative scheme,

12  that's one of their arguments.  We don't agree with that.

13       One, the issues -- the rights at issue are the right to

14  be free from alleged employment discrimination based on

15  race.  That's the right.  That right is protected both by

16  1981 and by Title VII.  Should an employer engage in conduct

17  that violates that right, either the federal agency, EEOC,

18  or the state agency-- both have the ability, power and

19  authority to go attack that conduct.

20       The fact that they're not using section 1981 to do so

21  is irrelevant.  There's nothing about allowing arbitration

22  of 1981 claims that prevents government agencies from

23  attacking the behavior that is protected by 1981 claims by

24  using other statutory schemes.

25       The other thing that I would argue here is that the

1 arguments that plaintiff has against arbitration itself, why

2 arbitration would not be fair in a 1981 claim, plaintiff

3 fails to distinguish why 1981 claims would somehow be harmed

4 much more significantly than all the other claims that

5 courts have ordered to arbitration, which include Title VII

6 pursuant to Gilmer, the ADEA, the Equal Pay Act -- I'm

7 sorry.  Title VII is pursuant to Luce.

8          THE COURT:  It's equally bad in this context --

9          MS. OCHS:  Right.

10          THE COURT:  -- as other contexts.

11          MS. OCHS:  And we --

12          THE COURT:  But not worse.

13          MS. OCHS:  We have authority that shows that Title

14 VII, ADEA, EPA, FMLA and FEHA have all been ordered to

15 arbitrate mandatory arbitration clauses.  And plaintiff has

16 the burden here.  And plaintiff has failed to show why 1981

17 claims are so special and so different that they ought to be

18 treated differently than all of the other civil rights

19 statutes.

20          THE COURT:  Okay.  I understand your arguments.  I

21 assume that if I conclude that I'm compelled to compel

22 arbitration, I should just deny the -- if I could construe

23 this filing of the amended complaint as a request, as a

24 motion for leave to file an amended complaint and deny it as

25 moot, right?

1           MR. ORGAN:  That's correct, your Honor.

2           THE COURT:  Okay.

3           MS. ORGAN:  Your Honor, could I just add --

4           THE COURT:  Last word?

5           MR. ORGAN:  -- a couple things?

6           THE COURT:  Yes.

7           MR. ORGAN:  Yes, your Honor.

8       So Duffield specifically stated that 118 did not --

9  that Gilmer was not incorporated in 118.  And that's what

10  Luce overturned when it overturned Duffield.  However, it

11  didn't go into -- Luce did not really go into whether or not

12  the Duffield factor -- strike that -- whether or not the

13  three factors should not be applied from Gilmer.

14      And respectfully on that point, we think that once you

15  get to that Duffield analysis and you have to then go to the

16  legislative history, that is something that has not been

17  analyzed by any other court.  And if this Court engages in

18  that analysis, it will find in favor of the plaintiff.

19      And there is a difference, respectfully, between

20  section 1981 and Title VII.  And the difference is section

21  1981 was passed after 600,000 Americans died in the Civil

22  War.  This was the most fractious point in American history,

23  and so there is a difference between that statute and Title

24  VII.

25      And finally on 118.  If --

16

1          THE COURT:  If I could just ask you a question

2    about that.

3          MR. ORGAN:  Yes.

4          THE COURT:  But the point of Luce Forward is

5    legislative history should not be relied on to establish

6    that Congress intended to preclude waiver of a judicial

7    forum in derogation of a clear and unambiguous statute.  I

8    mean it's saying that the language of section 118 is clear

9    and unambiguous and it precludes a finding that Congress

10   intended to bar arbitration.

11         MR. ORGAN:  I think it precludes a finding that

12   Congress intended to bar arbitration, that's correct.  It

13   doesn't, though, incorporate the converse of that.

14      So if that's the case -- and just let me --

15         THE COURT:  Right.  But the FAA --

16         MR. ORGAN:  I know that's very unclear, your

17   Honor.  Let me -- I think I could --

18         THE COURT:  No, no.  I think I understand what

19   you're saying, but the FAA is what finishes the job.

20         MR. ORGAN:  Except if Congress had intended that,

21   they would have made a per se rule in section 118 of the

22   1991 Act.  They would have said per se that these things are

23   arbitrable.  But they didn't make that.  They relied on this

24   vaguer language, and it's that vaguer language that actually

25   comes from Gilmer.  And therefore, because it comes from

17

1 <u>Gilmer</u> and is based on <u>Gilmer</u>, therefore you have to do the

2 <u>Gilmer</u> analysis.  Therefore, you can rely, your Honor, on

3 the legislative history.

4      And if you go to the legislative history of section

5 1981, it's clear that there were private employers back

6 then.  They were called slave holders.  And once they could

7 no longer own their former property, that was private

8 employment relations.

9      That specifically what section 1981's designed to

10 address, because the Freedmen's Bureaus weren't handling

11 that particular economic problem at that time.  And they

12 were perpetuating the racist tendencies that were happening

13 prior to that under slavery.  And so that's why Congress

14 specifically put forward section 1981, to address this

15 issue.

16      So how can we put them back?  How does it comport with

17 that prior legislative history?  The purpose of -- the very

18 purpose of that statute, to permit new employers to

19 essentially engage in similar conduct where they have

20 one-sided contracts that the employees have to sign and are

21 forced into that particular relationship.  That's what

22 they're saying in 1866 is impermissible.

23      So if you do the <u>Gilmer</u> analysis and you go back to

24 that history, it's clear that section 1981 is different than

25 Title VII and in that way, I think even under <u>Luce</u>, this

18

1  Court should rule in favor of the plaintiff.

2            THE COURT:  Okay.

3            MS. OCHS:  Your Honor --

4            THE COURT:  I understand the arguments, and I'll

5  issue a ruling shortly.  Thank you.

6            MR. ORGAN:  Thank you, your Honor.

7       (Proceedings adjourned at 10:32 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

19

CERTIFICATE OF TRANSCRIBER

1
2
3      I certify that the foregoing is a true and correct
4 transcript, to the best of my ability, of the above pages of
5 the official electronic sound recording provided to me by
6 the U.S. District Court, Northern District of California, of
7 the proceedings taken on the date and time previously stated
8 in the above matter.
9      I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.
14
15
16           Echo Reporting, Inc., Transcriber
17              Thursday, March 8, 2018
18
19
20
21
22
23
24
25